# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 1968 | **DATE** | 11/19/2012 |
| **CASE TITLE** | Gary Horwitz vs. Wells Fargo, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court grants in part Wells Fargo's motion to dismiss the amended complaint [46] and dismisses without prejudice the Sherman Act and slander of title claims (Counts IV and VI). In all other respects, the motion is denied. Plaintiff has fourteen days from the date of this order to amend Counts IV and VI. If he fails to do so, the Court will dismiss those counts with prejudice.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

### Facts

On August 16, 2005, plaintiff obtained a home loan from and executed a promissory note and mortgage in favor of The Home Loan Center ("HLC"). (Am. Compl. ¶¶ 13-14; *see id.*, Ex. A, Note & Ex. B, Mortgage.)

On October 1, 2005, HLC assigned its interest in the note and mortgage to Freddie Mac and its right to service the note and mortgage to Wells Fargo ("Wells"). (*Id.* ¶ 15; *see id.*, Ex. C, Notice of Assignment, Sale or Transfer of Servicing Rights.)

On October 14, 2005, Freddie Mac securitized the note and transferred it to a mortgage-backed securitized trust, which designated Wells as the note and mortgage servicer. (*Id.* ¶¶ 16-17.) On April 1, 2007, the trust, and Wells' associated servicing rights, terminated. (*Id.* ¶ 19.)

On April 9, 2007, Wells created a document that purported to assign HLC's interest in plaintiff's note and mortgage to Wells. (*Id.* ¶¶ 19-20; *see id.*, Ex. F, Assignment of Mortgage.) The assignment is executed by HLC's "Attorney in Fact," Michael Snively, Wells' Vice President of Loan Documentation. (*Id.*, Ex. F, Assignment of Mortgage.) Subsequently, Wells recorded the false assignment with the Cook County Recorder of Deeds, and since then, has held itself out to plaintiff as the owner and servicer of his note and mortgage. (*Id.* ¶¶ 21-22.)

On January 3, 2012, Wells filed suit in state court to foreclose the mortgage and attached a copy of plaintiff's note to HLC falsely endorsed to Wells by HLC's "Attorney-in-Fact," Wells' Vice President Lynnette Hanson. (*Id.* ¶ 23; *see id.*, Ex. H, Compl., *Wells Fargo Bank N.A. v. Gary Horwitz*, No. 12 CH 69 (Cir. Ct. Cook Cnty.), Ex. B, Note.)

**STATEMENT**

Plaintiff alleges that Wells' conduct violates the Fair Debt Collection Practices Act ("FDCPA"), the Sherman Act and the Illinois Uniform Deceptive Trade Practices Act ("Deceptive Trade Practices Act") and asserts claims against it to quiet title, for slander of title and unjust enrichment.

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Wells argues that all of plaintiff's claims should be dismissed because they are based on his conclusory assertion that the documents evidencing Wells' interest in his note and mortgage are fraudulent. At this stage of the litigation, however, plausibility, not proof, is required. *See id.* Plaintiff's detailed allegations easily vault this low hurdle. (*See* Am. Compl. ¶¶ 1-46.)

Alternatively, Wells argues that the FDCPA claim should be dismissed because the exhibits to the amended complaint establish that Wells is not a "debt collector" governed by the statute, and the claim is barred in whole or part by the statute of limitations. *See* 15 U.S.C. §§ 1692a(6), 1692(e) (barring a "debt collector," defined as a person in the debt collection business or who collects a debt owed to another that it obtained before the debt was in default, from using false or deceptive representations to collect a debt). But plaintiff expressly alleges that HLC did not assign its interest in the note and mortgage to Wells and that Wells' servicing rights ended in April 2007. (*See* Am. Comp. ¶¶ 15-24.) These allegations, if true, could support an FDCPA claim. *See* 15 U.S.C. § 1692e(2) (stating that "[t]he false representation of . . . the character, amount, or legal status of any debt" violates the FDCPA). Moreover, untimeliness is an affirmative defense that Wells has the burden of proving. *See* Fed. R. Civ. P. 8(c). Thus, unless the amended complaint "alleges facts that create an ironclad defense," which it does not, the asserted untimeliness of the FDCPA claim is not a basis for dismissing it. *See Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005).

Wells also contends that plaintiff's quiet title claim is defeated by his admission that his mortgage is in foreclosure. "An action to quiet title in property is an equitable proceeding wherein a party seeks to settle a dispute over ownership of property or to remove a cloud upon his title to the property." *Lakeview Trust & Sav. Bank v. Estrada*, 480 N.E.2d 1312, 1327 (Ill. App. Ct. 1985). To prevail on such a claim, plaintiff need not establish that he has perfect title, but must show that "his title is superior to that of defendant[]." *Dudley v. Neteler*, 924 N.E.2d 1023, 1026 (Ill. App. Ct. 2009) (quotation omitted). Plaintiff alleges that he holds title to the mortgaged property (Am. Compl. ¶ 8), and under Illinois law he retains that title until a court enters a judgment of foreclosure, confirms a sale of the property and issues a deed to the purchaser. *See* 735 Ill. Comp. Stat. 5/15-1509. Thus, plaintiff's admission that foreclosure proceedings are pending does not preclude him from asserting a quiet title claim. *See Diaz v. Home Federal Sav. & Loan Ass'n of Elgin*, 786 N.E.2d 1033, 1039 (Ill. App. Ct. 2002) (stating that a quiet title action is barred "only [if plaintiff] can show no title whatsoever in the property at issue").

Wells also argues that plaintiff's unjust enrichment and Deceptive Trade Practices claims are infirm because he cannot allege that Wells' conduct has already harmed him or is likely to do so in the future. *See* 815 Ill. Comp. Stat. 510/3 (vesting "[a] person likely to be damaged by [another's] deceptive trade practice" with a cause of action for injunctive relief); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the

**STATEMENT**

benefit violates the fundamental principles of justice, equity, and good conscience."). Given plaintiff's allegations that Wells collected mortgage payments to which it is not entitled and is pursuing baseless foreclosure proceedings, the Court rejects this argument.

The Court agrees, however, that the slander of title claim is flawed because plaintiff has not specifically alleged special damages. *Ringier Am., Inc. v. Enviro-Technics, Ltd.*, 673 N.E.2d 444, 446 (Ill. App. Ct. 1996) ("To make out a cause of action in slander of title . . . , a plaintiff must allege a false and malicious publication, oral or written, of words which disparage its title to property resulting in special damages.") (quotation omitted); *see* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). Plaintiff's allegations that Wells' actions have "decreased the value of [his] home" and "increased the cost of everything he has purchased with credit," (Am. Compl. ¶ 71), do not satisfy Rule 9(g). *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 270 (7th Cir. 1983) (plaintiff's assertions that "the natural tendency" of defamatory statements was to decrease plaintiff's sales, injure its goodwill and destroy the value of its advertising were not specific allegations of special injury required by Rule 9(g)).

Plaintiff's Sherman Act claim, which he pleads as an alternative to his other claims, is also infirm. To state a viable claim, plaintiff must allege that there is a contract, combination, or conspiracy, it unreasonably restrains trade in a relevant market and there is an accompanying injury. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). Plaintiff alleges that: (1) Wells and HLC had an agreement "to produce and record false documents" and "prosecute false foreclosures"; (2) the agreement "prevent[ed] mortgagors from refinancing" by "concealing from [them] . . .the identity of their mortgagees," and froze "legitimate banks" out of the mortgage business; and (3) the agreement has resulted in a general decrease in home values "throughout the country," including that of plaintiff's home. (Am. Compl. ¶¶ 81-87.) He does not, however, allege facts that suggest: (1) HLC and Wells agreed to falsely assign and foreclose on any mortgage other than his own; (2) Wells is so powerful in the nationwide mortgage market – the only market to which plaintiff even refers – that any such agreement would unreasonably restrain trade; or (3) the general decrease in U.S. home values is attributable to any such agreement. Absent such allegations, plaintiff has not stated a viable Sherman Act claim. *See Twombly*, 550 U.S. 544, 554-61 (2007); *Agnew*, 683 F.3d at 335-38.

### Conclusion

For the reasons stated above, the Court grants in part Wells Fargo's motion to dismiss the amended complaint [46] and dismisses without prejudice the Sherman Act and slander of title claims (Counts IV and VI). The motion is otherwise denied. Plaintiff has fourteen days from the date of this order to amend the Sherman Act and slander of title claims in accordance with this order. If he fails to do so, the Court will dismiss those counts with prejudice.